# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| CAMILIA ROBINETTE, AN INFANT, ETC., | ) ) ) |
| Plaintiff, | ) Case No. 2:15CV00003 ) |
| v. | ) **OPINION AND ORDER** ) |
| WAL-MART STORES, INC. STORE #650, | ) By: James P. Jones ) United States District Judge ) |
| Defendant. | ) |

*Carl E. McAfee and Julia L. McAfee, Carl E. McAfee, P.C., Norton, Virginia, and Jeffrey A. Sturgill, Sturgill Law Office, Wise, Virginia, for Plaintiff; W. Bradford Stallard, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendant.*

In this diversity action, the plaintiff claims that she was injured while a business invitee at the defendant's store, when she was struck by a piece of merchandise which fell from a shelf. Following discovery, the defendant has moved for summary judgment on the ground that the plaintiff cannot prove that the defendant's agents had knowledge of any dangerous condition and that the plaintiff's negligence claim is simply a formulation of the so-called method theory of liability, rejected in Virginia, whereby notice is sought to be proved by the storekeeper's method or manner of displaying its merchandise.

The defendant also moves to exclude the testimony of the plaintiff's expert witness on the ground that his qualifications do not support his relevant opinions and that in any event those opinions are speculative and without basis in the record.

The issues have been fully briefed and orally argued. For the reasons that follow, I will grant the defendant's motions and enter final judgment in its favor.[1]

I. Background.

The following facts are taken from the record submitted to the court, which includes the transcripts of discovery depositions and exhibits to those depositions.

On September 5, 2013, the plaintiff, Camilia Robinette, then twelve years old, and her mother, Cindy Robinette, visited the Wal-Mart store in Big Stone Gap, Virginia, to buy fish food. While shopping, the plaintiff and her mother stopped by the sporting goods section to look at exercise weights. They found three so-called kettlebell weights displayed on a shelf approximately sixteen inches wide and thirty-six inches high. The plaintiff removed a fifteen-pound kettlebell from the shelf to examine it, and seconds later, a twenty-pound kettlebell fell from the shelf and struck her right foot, seriously injuring her large toe.

---

[1] The plaintiff also moved for summary judgment as to liability and to foreclose any claim of contributory negligence. For the reasons stated in this Opinion, I will deny the motion for summary judgment on the ground of the defendant's liability. Because of my ruling, it is not necessary for me to decide whether contributory negligence is a viable defense.

The only witnesses to the incident were the plaintiff and her mother. As she approached the shelf, Mrs. Robinette noticed nothing unusual or alarming about the position of the kettlebells, nor did she notice anything wrong with the shelf on which the kettlebells were sitting. The kettlebells were near the edge of the shelf but not hanging over it. The plaintiff and her mother cannot estimate how close the weights were to the edge. All three kettlebells were sitting with the handle straight up and the flat part of the weight flush with the surface of the shelf. When the incident occurred, Mrs. Robinette was in the process of looking at other weights displayed on the bottom shelf. The plaintiff and her mother claim to have never touched the other kettlebells and did not see the subject kettlebell fall and do not know what caused it to fall off of the shelf.

As Mrs. Robinette testified in her deposition:

> Q. Did you yourself ever touch any of the kettlebells?
>
> A. No.
>
> . . . .
>
> Q. Was there anything about their position that caused you concern or –
>
> A. No.
>
> . . . .
>
> Q. Did you actually see it fall off the shelf?
>
> A. No.
>
> Q. Do you know what caused it to fall off the shelf?

> A. No.
>
> . . . .
>
> Q. Do you have any idea at that moment what caused the kettlebell to fall off the shelf?
>
> A. No, I did not.
>
> . . . .
>
> Q. Do you know whether they were all sitting straight up when you walked up?
>
> A. Yes.
>
> Q. They were all sitting straight up?
>
> . . . .
>
> A. Yes.
>
> Q. So if one rolled off, do you know what would have caused it to move off the flat surface and roll?
>
> A. No.

(Cindy Robinette Dep. 25, 26-27, 30, 33, 67-68, ECF No. 29-2.)[2]

The plaintiff testified similarly in her deposition:

> Q. When you reached for the one on the right, the blue one, did you touch the other, either of the other kettlebells?
>
> A. I did not.

---

[2] Mrs. Robinette gave a recorded statement to a Wal-Mart representative a week after the accident in which she indicated that her daughter had bumped an adjoining kettlebell, which caused the third kettlebell to fall off of the shelf. However, in her later sworn deposition she repudiated that statement, explaining that it had only been an assumption, since her head had been down and "[t]here was no way [she] could have even seen that happen." (Cindy Robinette Dep. 65.)

-4-

> Q. You didn't touch them?
>
> A. No.
>
> Q. Do you know what caused the kettlebell that fell off and hit your toe to fall off?
>
> A. I do not know.
>
> . . . .
>
> Q. Did you see it come off the shelf?
>
> A. I did not.

(Camilia Robinette Dep. 11-12, ECF No. 31-1.)

There was no video surveillance of the incident. No photographs were taken at the time of the accident. The following morning the plaintiff's pastor took a photograph of the shelf. Mrs. Robinette testified that at the time of the accident, the kettlebells were closer to the edge of the shelf than shown in the photograph. At oral argument, counsel for the plaintiff contended that the photograph indicates that the shelf slanted downward, rather than being horizontal, but in fact the photograph does not so indicate (McQueen Dep. Ex. 1, ECF No. 31-4), and there is no other evidence in the record that the shelf was other than horizontal.

The Wal-Mart home office regularly circulated safety policies and employee training instructions concerning proper stocking techniques to its various branches, including the defendant's store in Big Stone Gap. These stocking techniques include an activity called "zoning," which consists of straightening any wayward

mechandise, returning misplaced items to the proper shelves, and pulling merchandise forward on the shelves to make it more accessible to customers. Wal-Mart also conducted weekly safety meetings to discuss various topics including safe stocking techniques and falling merchandise.

## II. Defendant's Motion to Strike Plaintiff's Expert Witness.

The defendant moves the court to strike the anticipated testimony of the plaintiff's retained expert, J. Harold Deatherage, Ph.D. Dr. Deatherage, an engineer, opined in his written report submitted pursuant to Rule 26(a)(2)(B), that a small amount of horizontal force (approximately 1.6 pounds) applied to the top of the subject kettlebell would have allowed it to tip over and, if placed near the edge of the shelf, to have fallen off. He further opined that because the kettlebell was either unsecured or the shelf did not have a railing along its front edge, the placement of this merchandise presented a "dangerous and defective condition" which reasonably should have been known to Wal-Mart. (Deatherage Dep. Ex. 1, 5, ECF No. 27-2.)

Admission of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

-6-

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of proposed expert testimony has the burden of establishing its admissibility by a preponderance of the evidence. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592, n.10 (1993). In order to be admissible under Rule 702, an expert opinion must be relevant and reliable. *PBM Prodcuts, LLC v. Mead Johnson & Co.,* 639 F.3d 111, 123 (4th Cir. 2011). In assessing whether proffered expert opinion evidence is sufficiently relevant and reliable, the court acts as a gatekeeper. *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006).

In conducting its analysis, the trial court is to determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert,* 509 U.S. at 592. A trial court must also determine whether the proposed expert testimony is sufficiently "relevant to the task at hand." *Id.* at 597. Testimony that is speculative, based on

-7-

Case 2:15-cv-00003-JPJ-PMS   Document 44   Filed 02/05/16   Page 7 of 20   Pageid#: 637

incorrect assumptions, or misleads or confuses the jury is inadmissible at trial. *Anderson v. Nat'l R.R. Passenger Corp.,* 866 F. Supp. 937, 943 (E.D. Va. 1994).

In its motion to strike, the defendant asserts that the opinions of the plainitff's expert are inadmissible because they are speculative and without support in the record, and inconsistent with Virginia law. Furthermore, the defendant argues that Deatherage is not qualified to present opinions on the duties of retailers and whether Wal-Mart breached its duty to the plaintiff.

The defendant first argues that Deatherage's opinions are speculative because there is no evidence as to how or why the kettlebell fell. Although Deatherage believes that some force must have been applied to cause the kettlebell to fall, he also acknowledges that there are other ways the incident could have happened. An expert's testimony as to causation is speculation where the expert himself admits that his explanation of the cause is not the only reasonable one. *Stokes v. L. Geismar, S.A.,* 815 F. Supp. 904, 908-10 (E.D. Va. 1993). Therefore, it is argued, an opinion about the force needed to tip over a kettlebell when applied to the top of the handle, amounts to speculation.

The plaintiff counters that Deatherage formed his opinions by researching industry practices, which included visiting local sporting goods stores, reviewing the defendant's internal general safety policies and training instructions, and performing an engineering test to determine the amount of force required to tip

over a kettlebell.  Deatherage opines that the defendant should have known that displaying kettlebells without security or a railing was dangerous based, in part, on the way some other stores displayed such items.  Evidence of the usual and customary conduct of others under similar circumstances is normally relevant and admissible, as an indication of what the community regards as proper.  *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 33, at 193 (5th ed. 1984).

However, contrary to the plaintiff's argument, Deatherage visited local sporting goods stores only *after* completing his report.  While Deatherage opines that such visits supported his findings, this does not change the fact that these visits could not have been a basis from which his initial opinions were formed.  Furthermore, Deatherage admits that he is not aware of any industry standards to support his opinions in this regard.  Therefore, I find that Deatherage's opinions were not formed from a sufficient factual basis.  As a result, they are speculative and inadmissible.

The defendant next argues that the testimony of Deatherage should be excluded because he lacks the necessary qualifications to testify about the duty of retailers or whether the defendant breached its duty because he has no specialized training or knowledge in retail.  An "expert's background must show qualification sufficient to permit expression of an opinion that is borne of the specialized

-9-

knowledge or expertise which allows the expert to give opinion evidence in the first instance." *Anderson,* 866 F. Supp. at 943.

Deatherage is a forensic engineer, licensed in six states. He has an extensive educational and professional background in engineering. He has published numerous articles and conducted a significant amount of research throughout his career, all with respect to engineering. His education and professional background certainly qualify him as an expert in engineering, and in that respect, he is more than qualified to testify concerning the force required to tip a kettlebell. However, his proffered testimony goes much further than this. The plaintiff wishes to introduce Deatherage's testimony to establish the defendant's negligence. Therefore, he must be qualified to render opinions on matters such as the duty of retailers and whether the defendant breached this duty.

Deatherage has no specialized training or professional experience in retail sales. His education and professional experience is strictly limited to engineering. None of his research or publications concern the retail industry. Within the past thirty years, Deatherage has testified in numerous litigated matters involving design, safety, forensic failure analysis, and other civil engineering issues. However, prior to this case, his experience in similar cases has been limited to calculating the impact force of the falling merchandise. (Deatherage Dep. 14-16, ECF No. 27-1.) Although a purported expert need not possess all five requisites of

-10-

qualification under Rule 702, Deatherage fails to satisfy even one of these requisites with respect to his opinions about the defendant's negligence. Consequently, I find that Deatherage is unqualified to testify on matters concerning the duty of retailers or whether the defendant breached its duty to the plaintiff.

Finally, the defendant argues that Deatherage's testimony is inadmissible because it is a restatement of the method theory of liability, which is not recognized under Virginia law. Under the method theory, the critical inquiry is whether the liability arises from the "means used to exhibit commodities for sale." *Layne v. Wal-Mart Stores E., L.P.,* No. 4:06CV00025, 2007 WL 128320, at *4 (W.D. Va. Jan. 11, 2007) (quoting *Winn-Dixie Stores, Inc. v. Parker*, 396 S.E.2d 649, 651 n.3 (Va. 1990)). In *Layne,* the plaintiff retained an expert witness who offered testimony that "the placement of [an] unboxed iron created an unsafe condition because Wal-Mart was negligent in placing irons on such a high shelf, allowing a loose iron to be placed on top of the shelf where it could not be seen, and failing to warn customers about the dangers of removing items from higher shelves." *Id.* at *4. The expert further opined "that Wal-Mart's display did not comport with 'good design practices' because Wal-Mart placed the shelves too high, stacked merchandise in an unsafe manner, and allowed products outside of the box." *Id.* The court in *Layne* held that this testimony was a "restatement of the method theory of liability." *Id.* In the present case, Deatherage opines that the

-11-

defendant's kettlebell display did not comport with good design practices because without a railing or otherwise securing the merchandise, the shelf displayed the kettlebells in an unsafe manner. Therefore, like the testimony in *Layne*, his opinion amounts to a restatement of the method theory and is inconsistent with Virginia law.

In sum, Deatherage's education, professional experience, research, and publications all focus on engineering. His testimony in other cases has been limited to calculating the force of falling merchandise. Therefore, I find that he is not qualified to offer opinions concerning the duties of retailers and whether the defendant breached any such duty. Additionally, Deatherage's opinions are speculative because they are not based on sufficient facts in the record. Furthermore, Deatherage's testimony essentially amounts to a restatement of the method theory, which has been rejected in Virginia. For all of these reasons, Deatherage's opinions are inadmissible, and defendant's Motion to Strike the Testimony of Plaintiff's Expert will be granted.

III. Defendant's Motion
for Summary Judgment.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To raise a genuine issue of material fact sufficient to avoid summary judgment, the evidence must be "such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir. 1994).

Rule 56 mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party "need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case." *Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 393 (4th Cir. 1994) (internal quotation marks and citation omitted). Summary judgment is not "a disfavored procedural shortcut," but rather a valuable mechanism for excluding "claims and defenses [that] have no factual basis." *Celotex,* 477 U.S. at 327. It is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks and citation omitted).

Virginia substantive law governs this diversity claim. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 78 (1938). In Virginia, a landowner "must use ordinary

-13-

care to keep his premises reasonably safe for an invitee, although he is not an insurer of the invitee's safety." *Tate v. Rice,* 315 S.E.2d 385, 388 (Va. 1984). In the absence of any evidence tending to show that a landowner knew, or should have known by exercise of reasonable diligence, of the defect or unsafe condition, the landowner will not be liable for injuries caused by some defect or unsafe condition in the premises. *See Roll 'R' Way Rinks, Inc. v. Smith,* 237 S.E.2d 157, 161 (Va. 1977). It is the plaintiff's responsibility to introduce evidence of the landowner's actual or constructive knowledge of a defective condition on the premises to establish his prima facie case of negligence. *Id.*

The defendant first argues that summary judgment is appropriate because it did not have actual or constructive knowledge of any defective condition on its premises. In order to establish a prima facie case of negligence, Virginia law requires that a plaintiff must show that a defendant had either actual or constructive notice of the alleged hazard. *Grim v. Rahe, Inc.,* 434 S.E.2d 888, 889 (Va. 1993). There is no evidence showing that the defendant here actually knew of any defect or hazard with respect to the kettlebells.[3] Therefore, there must be evidence that the defendant had constructive notice of the alleged hazard. Constructive

---

[3] The plaintiff claims that the defendant had actual notice of the condition because the manner in which the kettlebells were displayed posed a foreseeable risk of danger to invitees, and thus, the defendant had actual or imputable knowledge of the condition. However, this argument fails because, as discussed below, it is essentially a restatement of the method theory of liability.

-14-

knowledge of a dangerous condition may be shown by evidence that the condition was noticeable and "had existed for a sufficient length of time to charge its possessor with notice." *Id*. at 890. The defendant claims that there is no evidence to satisfy either of these requirements.

With respect to the first constructive notice requirement, the evidence does not indicate that any defect with the kettlebell display was noticeable. Indeed, the plaintiff's mother testified during her deposition that she noticed nothing alarming or unusual about the kettlebell display. If there had been a noticeable condition, certainly the plaintiff or her mother would have known, because immediately prior to the accident, they were directly in front of the kettlebells, only inches away. Moreover, there is no evidence to suggest that any Wal-Mart employees or management noticed anything unusual about the kettlebell display that day.

The plaintiff relies on a non-Virginia case, *Stepherson v. Wal-Mart Stores, Inc.,* 785 So.2d 950, 956 (La. App. 2d Cir. 2001), involving a similar incident, to argue that the defendant here had actual notice that displaying weights on a shelf without a protective railing could create a dangerous condition. In *Stepherson*, the plaintiff was injured when exercise dumbbells fell on her foot. The court based its decision, in part, on the manner in which the dumbbells were displayed, determining that Wal-Mart created an unreasonable risk of harm that could have been remedied with a rail or other restraining device.

-15-

Case 2:15-cv-00003-JPJ-PMS   Document 44   Filed 02/05/16   Page 15 of 20   Pageid#: 645

*Stepherson* does not control in this case. First, *Stepherson* is a Louisiana case. Louisiana has a very different approach to premises liability than Virginia. Importantly, unlike Virginia, Louisiana has not rejected the method theory of liability. Second, the facts of *Stepherson* are not "strikingly similar" as the plaintiff suggests. Virginia law requires that a defendant have notice of the *specific* unsafe condition that injured *the plaintiff*. *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 453 (4th Cir. 2004). Unlike the present case, the incident in *Stepherson* involved dumbbells which were different in several important respects from the kettlebells. These dumbbells in *Stepherson* were rounded on both sides with a connecting bar in between, 785 So.2d at 953, and thus easier to roll. In contrast, the kettlebells here had a flat bottom, a rounded middle, and a handle on top that allows the weight to be used in a swinging motion. The mere fact that dumbbells have rounded sides likely would increase the possible danger of them rolling off a shelf. On the contrary, kettlebells have a single flat bottom, so that absent evidence that they were on their sides at the time of the incident, the likelihood of them rolling off the shelf is significantly less than dumbbells. Moreover, the manner of display used for the dumbbells was entirely different. The dumbbells in *Stepherson* were "stacked on top of each other," which is one of the reasons why the court found the manner in which they were displayed to be unreasonably dangerous. 785 So.2d at 956. On the contrary, there is no evidence

in the present case to suggest that the kettlebells were ever stacked on top of each other. It is undisputed that the kettlebells in the present case were sitting next to one another, positioned right side up with the flat part of the weight flush with the shelf.

The plaintiff also argues that notice should be imputed to the defendant because the defendant's affirmative conduct was the genesis of the unsafe condition. In this regard, the plaintiff contends that despite the fact that the defendant's internal safety policies and stocking instructions "warned against the conduct that occurred here" (Pl.'s Mem. 8, ECF No. 31), the defendant nevertheless chose to display the kettlebells near the edge of a shelf without a restraining bar. Where a premises owner's affirmative conduct is alleged to be the cause of the unsafe condition, Virginia courts impute notice to the defendant if the danger was reasonably foreseeable. *Memco Stores, Inc. v. Yeatman,* 348 S.E.2d 228, 231 (Va. 1986). In other words, notice is found where "an ordinarily prudent person, given the facts and circumstances [the defendant] knew or should have known, could have foreseen the risk of danger resulting from such circumstances." *Id*.

However, the policies and instructions to which the plaintiff refers only address proper stocking procedures for merchandise in general. General knowledge that merchandise can fall is insufficient to establish constructive notice

-17-

of a specific condition. *Hodge*, 360 F.3d at 453. Under Virginia law, the constructive notice inquiry focuses on whether knowledge of a *specific* unsafe condition may be imputed, which may be shown by evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its [unsafe] condition. *Grim,* 434 S.E.2d at 890. Here, the only place where kettlebells specifically are mentioned in the policies and stocking instructions is on a diagram showing how exercise weights should be displayed. The policies never indicate that shelf rails or other security should be used with kettlebells. Therefore, these internal policies are insufficient under Virginia law to establish that the defendant knew or should have known of the *specific* unsafe condition that injured *the plaintiff*. Furthermore, the defendant's affirmative conduct in this case was nothing more than a choice about how to display the kettlebells. As such, the plaintiff's claim essentially amounts to a restatement of the method theory of liability, which is not recognized in Virginia.

The method theory of liability is the theory that "[a] storeowner is definitely informed of the threat of peril, for he *instituted or adopted* the *manner of offering or delivering* the *merchandise.*" *Layne,* 2007 WL 128320 at *3 (quoting *Thomason v. Great Atl. & Pac. Tea Co.*413 F.2d 51, 52 (4th Cir. 1969) (emphasis added). The Virginia Supreme Court has explicitly rejected the method theory as a substitute for notice. *Winn-Dixie,* 396 S.E.2d at 651 n.3; *see Rodgers v. Food*

-18-

Case 2:15-cv-00003-JPJ-PMS   Document 44   Filed 02/05/16   Page 18 of 20   Pageid#: 648

*Lion, Inc.*, No. 95-2815, 1996 WL 673802, at n* (Nov. 22, 1996) (unpublished) (noting that *Winn-Dixie* overruled prior Fourth Circuit precedent).

In *Layne,* the plaintiff was injured while shopping at a Wal-Mart store when an unpackaged iron fell on her. The plaintiff retained an expert witness who offered testimony that "the placement of the unboxed iron created an unsafe condition because Wal-Mart was negligent in placing irons on such a high shelf, allowing a loose iron to be placed on top of the shelf where it could not be seen, and failing to warn customers about the dangers of removing items from higher shelves." 2007 WL 128320 at *4. The expert also opined that "Wal-Mart's display did not comport with 'good design practices' because Wal-Mart placed the shelves too high, stacked merchandise in an unsafe manner, and allowed products outside of the box." *Id.* The court in *Layne* held that such testimony was a "restatement of the method theory of liability," because "[c]ertainly, the height of the shelves, placement of items outside of boxes, and lack of warning signs are all parts of the method in which Wal-Mart chose to display its irons." *Id.*

Although the plaintiff denies that her theory of negligence is a restatement of the method theory, I find that her claim is precisely that. A simple comparison of her claim with the language of the method theory illustrates this point: the plaintiff claims that the defendant was *definitely informed of the threat or peril*, that the defendant chose to display (*adopted or instituted*) the kettlebells (*the merchandise*)

-19-

toward the edge of a shelf that was too high and without a railing (*the manner of offering or delivering*). Accordingly, the plaintiff may not prove constructive notice based on the manner in which the kettlebells were displayed.

As a result, it is incumbent upon the plaintiff to show *when* the kettlebells became dangerous. In Virginia, if a plaintiff is unable to show when a defect occurred on the premises, she has not made a prima facie case and summary judgment for the defendant is appropriate. *Grim,* 434 S.E.2d at 890. There is nothing in the record to suggest when a defect with the kettlebells occurred. Consequently, the plaintiff fails to make a prima facie case of negligence and summary judgment for the defendant is proper.

IV.

For the reasons stated, it is **ORDERED** that plaintiff's Motion for Summary Judgment (ECF No. 30) is DENIED, defendant's Motion to Strike the Testimony of Plaintiff's Expert (ECF No. 26) is GRANTED, and defendant's Motion for Summary Judgment (ECF No. 28) is GRANTED.

A separate final judgment will be entered.

ENTER: January 14, 2016

/s/ James P. Jones
United States District Judge

-20-

Case 2:15-cv-00003-JPJ-PMS   Document 44   Filed 02/05/16   Page 20 of 20   Pageid#: 650